R. A. F. JACKSON v. FANNIE W. RUTLEDGE AND
HUSBAND.

MARRIED WOMAN.  *Vendor's Lien.*  If a married woman buy land, partly
for cash and partly on time, and accept a deed of conveyance to her
separate use, retaining a lien for the time instalments, she cannot
have the money which she has paid refunded merely because of her
coverture, and the lien reserved for the payment of the purchase
money may be enforced in equity.

FROM GILES.

Appeal from the Chancery Court at Pulaski.  W.
S. FLEMING, Ch.

W. H. McCALLUM for complainant.

N. SMITHSON and J. S. WILKES for defendants.

COOPER, J., delivered the opinion of the court.

On the 13th of October, 1874, Fannie W. Rutledge,
then and now a married woman, bought from J. H.
Crenshaw a tract of land at the price of $3,144.60.
She paid him in cash $1,500, being money collected
from her late guardian by suit in the Chancery Court,
and paid to her in person under orders of that court.
She gave Crenshaw her two notes for $822.30 each,
payable respectively on the 25th of December, 1876
and 1877.  These notes were endorsed to the com-
plainant, R. A. F. Jackson, for value, before maturity.

Crenshaw had bought the land from D. L. Gordon, and paid him therefor, but the legal title was still in Gordon. At the request of Crenshaw, Gordon made the conveyance by deed in fee direct to Fannie W. Rutledge, to her sole and separate use, reciting the consideration passing from her to Crenshaw, and retaining a lien on the land for the payment of the two notes given for the purchase money. Rutledge and wife went into possession of the land.

On the 15th of November, 1877, Jackson filed the original bill in this cause against Fannie W. Rutledge and W. W. Rutledge her husband, to enforce the lien reserved on the land for the payment of the purchase notes. The husband and wife answered jointly, admitting the sale and purchase of the land and execution of the notes as above stated. They suggest that Gordon's title to the land is defective, and insist that the notes, and the contract of purchase were void, because of the coverture of the defendant Fannie at the time. On the 2d of September, 1878, Rutledge and wife filed a bill, in the nature of a cross-bill, against Jackson, Crenshaw and Gordon, re-stating the facts as above, and asking for relief upon the ground of a defect of title, and that the contract of purchase was void for the reason just stated. The defendants to this bill filed a joint answer, in which they set out the facts touching Gordon's title to the land, and resist the relief sought. An agreed statement of facts was afterwards drawn up by the parties, upon which and the pleadings the cause was heard by the Chancellor, who sustained the validity of the conveyance

and subjected the land to the satisfaction of the unpaid purchase money under the lien reserved in the deed. He gave no personal decree against either the husband or wife. Rutledge and wife appealed.

It is conceded that the . title to the land is good, and that Jackson, by the admission of Crenshaw and Gordon, is entitled to the unpaid purchase money, if it can be collected. The case turns, therefore, upon the point whether the lien reserved in the deed can be enforced. The counsel for the married woman insist that the sale and conveyance are void by reason of their client's coverture at the time they were made, and as a consequence, that she should have a decree against Crenshaw and Gordon for the money paid, which should also be declared a lien on the land, and that she should recover the value of permanent improvements, subject to an account for rents since she has been is possession.

"As to personal estate," says Lord Hardwicke, "undoubtedly, where there is an agreement that the wife shall have to her separate use either the whole or particular parts, she may dispose of it, though nothing is said of the manner of disposing of it." *Peacock* v. *Monk,* 2 Ves., 191. "I have always thought it settled," says Lord Thurlow, citing *Peacock* v. *Monk,* and a very old case in Tothill, "that from the moment in which a woman takes personal property to her sole and separate use, from the same moment she has the sole and separate right to dispose of it." *Fettiplace* v. *Gorges,* 1 Ves. Jr., 46; S. C. 3 Bro. C. C., 8. Since this decision, the power of

a married woman to dispose of money or personal effects held to her separate use, where there is no restraint upon her power of disposition in the settlements, has been universally conceded. Our decisions are in accord. *Prewet* v. *Looney*, 8 Yer., 63; *Porter* v. *Baldwin*, 7 Hum., 175; *Martin* v. *Olliver*, 9 Hum., 566; *Powell* v. *Powell*, 9 Hum., 477; *Cox* v. *Scott*, Memp. L. J., 248. So, of the rents and profits of her separate realty. *Young* v. *Jones*, 9 Hum., 551; *Bottoms* v. *Corley*, 5 Heis., 11; *Ordway* v. *Bright*, 7 Heis., 681; *Cheever* v. *Wilson*, 9 Wall., 119. A married woman may, with separate means, or by the proceeds of property in which she has an interest, purchase property, personal or real, from her husband or a third person, and have it settled to her separate use. *Livingston* v. *Livingston*, 1 Johns. Ch., 537; *Lady Arundell* v. *Phipps*, 10 Ves., 139; *Liles* v. *Fleming*, 1 Dev. Eq., 185; *Pritchard* v. *Wallace*, 4 Sneed, 405; *Ready* v. *Bragg*, 1 Head, 512; *McClure* v. *Doak*, 6 Baxt., 368; *Tarbox* v. *Tonder*, 1 Tenn. Ch., 164.

It is true, the common law incapacity of a married woman to contract is fully recognized in this State. *Catron* v. *Warren*, 1 Col., 358; *Kirby* v. *Miller*, 4 Col., 3. She cannot, therefore, make a valid promissory note. *Sheppard* v. *Kindle*, 3 Hum., 80. She can only bind her separate estate, within the power conferred, by an express agreement and in the contract if in writing. *Cherry* v. *Clements*, 10 Hum., 552; *Ragsdale* v. *Gossett*, 2 Lea, 730. And any decree for specific performance can only be *in rem* against the specific property, not *in personam* against the married

woman. *Aylett* v. *Ashton*, 1 M. & C., 105; *Francis* v. *Wigzell*, 1 Mad., 258; *Young* v. *Paul*, 2 Stockt., 401; *Chatterton* v. *Young*, 2 Tenn. Ch., 771.

By reason of the personal incapacity of a married woman to contract, she cannot make an executory agreement to purchase land on credit, and pay the purchase money by instalments. It would be optional with her whether she would comply with her contract, or interpose her coverture in bar of the recovery of the money, or of a specific performance. *Morrison* v. *Kinstra*, 55 Miss., 71. So, where a conveyance has been made to a married woman, though not to her separate use, and she has reconveyed in mortgage to secure the purchase money, the mortgage is of no legal validity. *Concord Bank* v. *Bellis*, 10 Cush., 276; *Eaton* v. *George*, 40 N. H., 258. But even in such cases, equity has interposed by compelling the husband and wife, where the husband has thereby acquired an interest, to make a valid mortgage to secure the price, (*Leach* v. *Noyes*, 45 N. H., 364); or has upheld the mortgage as creating an equitable lien. *Hatch* v. *Morris*, 3 Edw., 313. Mr. Bishop's comment on the relative rights of the parties in such cases is this: "In a court of law, the conveyance to the wife must be held good, at least as between the parties; because, though, the mortgage being void, no consideration passed to the grantor for the conveyance, yet it was what he consented to receive, and a voluntary conveyance is at law sufficient to pass the estate. In equity, on the other hand, the grantee would be held to be a trustee for the grantor by reason of the failure of what was.

really contemplated between the parties as a considera-
tion." 1 Bish. Mar. Wom., section 600.

If the conveyance be to the sole and separate use
of the married woman, there seems to be no difficulty
in treating a debt contracted in the purchase as bind-
ing on the property, although not personally obligatory
on the feme, because, where she takes possession under
the conveyance, the debt is contracted for the benefit of
her separate estate. It was so held in *Ballin* v. *Dil-
laye,* 37 N. Y., 35, 39, a decision of weight upon
principle, the statutes of New York at that time, as
the opinion shows, not having done away with the
common law disability of a married woman to contract.
See, also, *Yale* v. *Dederer,* 22 N. Y., 450. So, where
the husband, or a third person, buys the land, and
causes the conveyance to be made to the wife to her
sole and separate use, there is no difficulty in enforc-
ing against the land the vendor's lien for the unpaid
purchase money. *Upshaw* v. *Hargrove,* 6 Sm. & M.,
291; *Doyle* v. *Orr,* 51 Miss. 229. And all the cases
agree that the contract between a married woman and
a third person for the purchase by the former from
the latter, is not void or voidable merely because
the married woman is not bound. *Concord Bank* v.
*Bellis,* 10 Cush., 276; *Catron* v. *Warren,* 1 Col., 358.
At any rate, to use the language of Beck, J., in an
Iowa case: "If it appears certain that a party con-
tracting with a married woman will not suffer on ac-
count of her disability, as in the case where she has
performed her obligation, or has done that which is
the consideration for the promise of the other party,

or when the " consideration is secured to him." *Chamberlain* v. *Robertson,* 31 Iowa, 408, 414.

If, now, we have a married woman with money which she may use in purchasing land, an actual purchase and conveyance of the land to her sole and separate use, capacity in her to purchase and take by grant, and the consideration secured to the vendor without reference to the personal liability of the *feme,* we have, under the foregoing principles and decisions, all the elements of a valid trade. Her incapacity to execute valid notes, if we treat the purchase notes as void on that ground and because not expressly made obligatory on her separate estate, would not affect the vendor's right to subject the land to the satisfaction of the unpaid purchase money by virtue of the vendor's equity and of the lien reserved. By the delivery and acceptance of the deed of conveyance, the contract was executed and the title vested in her. She takes the title subject to the charge created by the terms of the deed. *Trezevant* v. *Bettis,* 1 Leg. Rep., 48; *Lee* v. *Newman,* 1 Memp. L. J., 139; *Eskridge* v. *Eskridge,* 51 Miss., 522.

Under such circumstances, the married woman is not entitled to have the cash payment refunded. In making the payment, as we have seen, she exercised a right which the law concedes. Having the money, she might dispose of it, even to her husband, with or without consideration. Her disability, this court has often said, is a shield to defend, not a sword with which to attack. There is not the least ground, in a court of equity, to rescind the purchase, and charge

the land with the money paid by her. All she can justly claim is exemption from personal liability.

The land is hers, subject to the payment of the purchase money by virtue of the vendor's lien, and as Crenshaw and Gordon agree that this money shall go to the original complainant Jackson, no difficulty arises out of the fact that the notes are invalid as notes. The same conclusion has been reached, and that too after decisions to the contrary, in a precisely similar case, by the Supreme Court of Mississippi, the clear and satisfactory opinion being delivered by Campbell, J. *Johnson* v. *Jones*, 51 Miss., 860.

One of the counsel for the married woman calls attention in his brief to the fact that the fund, part of which was used in paying for the land, was settled upon the *feme* by the decree, "subject to her disposition by last will and testament." But this settlement was made while the client was an infant, and was intended to enlarge her power, not to restrict it. After she came of age, upon privy examination by the Chancellor himself, and formal decree, the fund was paid directly to her, subject only to the settlement to her separate use, and to be invested in realty though not in the particular land.

The pleadings raise no question of the power of the *feme* over the fund, nor probably could any be made so long as the decree, under which it was paid to her, remained in full force.

There is no error in the Chancellor's decree, and the same will be affirmed with costs.