THE PEOPLE OF THE STATE OF NEW YORK by FRANK C. MOORE, as Comptroller, Plaintiff, *v.* TABITHA S. PIERCE, as Executrix of JOSEPH S. KILE, Deceased, et al., Defendants.

Supreme Court, Special Term, Sullivan County, March 18, 1946.

*Nathaniel Goldstein, Attorney-General* (*Douglas S. Rider* and *Arthur W. Mattson* of counsel), for plaintiff.

*William G. Costa* for County of Sullivan, defendant.

*Ellsworth Baker,* referee.

SCHENCK, J. This is an action to foreclose a United States deposit fund mortgage on property located in the town of Fallsburgh, Sullivan County, New York. The action was commenced on or about September 25, 1943. At the time, there were unpaid taxes upon the property.

The County of Sullivan was made a party to the foreclosure. On July 29, 1940, the property had been sold for the 1938 taxes. It was purchased by the County of Sullivan, and deeded to the county on July 30, 1941.

The judgment of foreclosure and sale was made February 28, 1944, and entered March 1, 1944, in the Sullivan County Clerk's Office. The judgment of foreclosure and sale contained the usual provision " that out of the proceeds of the sale, after deducting the amount of his fees and expenses of such sale, the said referee pay all taxes, assessments, and water rates which are liens upon the property sold and redeem the property sold from any sales for unpaid taxes, assessments or water rates, which have not apparently become absolute." This complied with section 1087 of the Civil Practice Act.

The property was sold April 15, 1944, for $1,050 to Ralph H. Lounsberry. The purchaser produced a statement showing that there were taxes due the County of Sullivan of $528.34.

The county appeared in the action but interposed no answer. The complaint contained the usual allegation that the claim of the County of Sullivan was subordinate to the mortgage in question.

The referee, on the sale, being in doubt as to the proper procedure to be adopted by him in distributing the proceeds of the sale, and paying the taxes, has moved this court for an order determining whether or not the lien of the mortgagor, the People of the State of New York, is superior to the lien of the defendant, Sullivan County, for taxes. As to this matter the parties have made conflicting claims as United States deposit fund mortgages present unusual features.

Provision is made by sections 74–79 of the State Finance Law for loans from this fund upon the security of mortgages, for the foreclosure of such mortgages, and for the distribution of surplus moneys. It is provided in section 78 of the State Finance Law: " The provisions of the civil practice act relating to the disposition of the surplus money arising from the foreclosure of mortgages are hereby made applicable to the surplus arising from the sale of mortgaged premises as prescribed in the preceding section."

It is also provided in section 77 of the State Finance Law in relation to foreclosures of these mortgages: " All actions of proceedings for that purpose shall be prosecuted or conducted by the attorney-general, in the supreme court or in the county court of the county where the mortgaged premises are located, and in conformity with the practice in such case made, and provided."

It is provided in section 151 of the Tax Law that the County Treasurer of the County of Sullivan, after the expiration of one year from the return of unpaid taxes to him, shall cause to be published notice of sale of the real estate upon which there are unpaid returned taxes. The list of real estate to be published must contain the name of the owner or occupant as the same appears upon the assessment roll, a brief description of the real estate, and the amount of taxes and charges.

It is required, however, by this section, that the list shall not be published until the same has been submitted to the Department of Taxation and Finance.

It is further provided in section 157 of the Tax Law that the State Department of Taxation and Finance shall approve the list. The department is required to attach a schedule to the list specifying (a) the parcels, among others, owned by the State and those mortgaged to the commissioners for loaning of certain moneys of the United States, (b) which of such parcels, if any, shall be advertised and sold and (c) which of such parcels shall not be advertised to be sold.

It is also required by section 157 that upon the return of the list and the schedule to the County Treasurer, he must strike from the list the parcels not to be advertised to be sold as specified in the schedule. He is further required, as to the parcels not to be advertised to be sold, to enter upon the schedule an itemized statement showing the amount of taxes, etc., and return the schedule to the State Department of Taxation and Finance, and the taxes upon such parcels stricken from the list are required to be audited and paid by the State Comptroller. The intent of the statute appears to be that the parcels to be stricken from the list are lands belonging to the State.

The section further provides as follows: "Such county treasurer conducting such sale shall bid in for the state all lands specified in such schedule, so transmitted to him, to be advertised to be sold thereat, and shall, at the close of such sale, transmit to the state department of taxation and finance a verified and itemized statement showing the amount of each bid made in the name of the state thereat, and the state comptroller shall, within ten days after the receipt by him of such statement, on the requisition and certificate of such department, draw his warrant for the payment of the amount shown to be due thereon out of moneys appropriated and available therefor."

It appears to be the purpose of the section to require the Department of Taxation and Finance to make a schedule including lands owned by the State, lands upon which there are

United States deposit fund mortgages and other lands against which the State holds a bond or lien, or a tax sale certificate, to enable the State Department of Taxation and Finance to properly protect the interest of the State in these lands. For that purpose, the department is required to designate the parcels which are not to be sold, namely, lands belonging to the State. Taxes upon these lands must be paid by the State Comptroller. As to the other lands appearing in the schedule, including those covered by United States deposit fund mortgages, the County Treasurer is required to bid them in in the name of the State, transmit a statement of his bids, and the State Comptroller, in due course, is required to pay the amount thereof to the County Treasurer.

The Attorney-General has arrived at this construction of the statute, and has so advised taxing officers.

In the Report of the Attorney-General for 1914 (Vol. 2, pp. 134–135) it appears that a tax sale of lands incumbered by a United States deposit fund mortgage was held in Erie County. Notice was not given to the State Comptroller pursuant to sections 151 and 157 of the Tax Law. The Attorney-General advised the officials of Erie County that unless the notices required were given to the State Comptroller, the sales were invalid. In this connection he said: " The provisions of section 157 of the Tax Law of the State were manifestly intended to be state wide in their application, and in its provisions as to notice to the Comptroller it was intended to permit that official to be forewarned of such sale, and thereupon inform the local county treasurer as to the parcels which are mortgaged to the Commissioners for loaning certain moneys of the United States or against which the State holds a bond or lien in order that the county treasurer might bid in for the State all such lands, as required by the section. There could be no purpose in limiting the provisions of the section to any particular portion of the State or excluding any portion of the State from its provisions. It was not inconsistent with any provision of the special laws relative to the collection of taxes in Erie County, and therefore, I believe, was entitled to full force and credit in that political subdivision."

If the procedure outlined in sections 151 and 157 of the Tax Law had been followed herein, taxes levied upon the premises in question, which were covered by a United States deposit fund mortgage, should have been listed in a schedule attached to the list of tax sales by the County Treasurer of the County of Sullivan, and upon the tax sale he should have bid in these

parcels in the name of the State, and the amount of his bid would have been paid to the county by the State.

The attorney for the County of Sullivan complains that the State was guilty of laches in that it allowed taxes to be unpaid and to accumulate.

This does not appear to be so. If the County Treasurer and the department had followed the procedure outlined in the Tax Law, and the County Treasurer had bid in the property in question, the county would have been paid by the State the amount of the bid. The State then would have been put on immediate notice and could have added the taxes which it paid to the principal of its mortgage.

The right of a mortgagee to pay taxes and add the same to the mortgage debt exists whether there is or is not a provision allowing this procedure in the mortgage. (*Sidenberg* v. *Ely,* 90 N. Y. 257.)

The situation here appears to be as follows: The referee is required by the judgment to pay out of the proceeds of the sale all taxes which are liens upon the property sold.

He is bound to notice that there can be no valid tax liens or tax sales on this property under the procedure outlined by the Tax Law, except current taxes which might have been levied and assessed before their return to the County Treasurer, or before a sale after their return pending payment by the State.

Probably, there was no assessment and levy after the tax sale, in view of the procedure adopted by the county. (Tax Law, §§ 153, 50.)

No proof has been submitted on this phase of the controversy.

The proceeds of the sale, therefore, should be turned over to the State.

If, on the other hand, the tax sale is valid, it may have become absolute, and, thus, the referee cannot redeem. (Civ. Prac. Act, § 1087; Tax Law, § 131.)

In any event, the lien of the United States deposit fund mortgage was superior to any title under the tax sale. (Tax Law, § 154.)

Submit order. No costs.