Richard D. Simons, J.
These are four separate actions involving Lots Nos. 8 and 13 of the Dunrovin Homesteads in DeWitt, New York. Geddes Savings & Loan Association sues to foreclose a mortgage on Lot No. 8 and Oneida Savings Bank sues to foreclose a mortgage held on Lot No. 13. Thomas Quigley has moved for summary judgment dismissing both foreclosure actions and for summary judgment in his two separate affirmative actions seeking to clear title to the lots under article 15 of the Real Property Actions and Proceedings Law.
The actions pose the question of the rights of a corporate officer and major stockholder to acquire by tax deed corporate real property subject to mortgages and thereby eliminate the mortgagees’ liens.
This land was originally owned by Frank J. Malvasi. In August, 1964 he mortgaged Lot No. 13 to the Oneida Savings Bank for the sum of $20,750, and in January, 1964 he mortgaged Lot No. 8 to the Geddes Savings & Loan Association for $20,000. In 1965 Malvasi executed a mortgage on both lots to Tuscarora *1054 Building Products Incorporated, which was not recorded until 1967. In April of 1966, he deeded the properties to Tuscarora Building Products Incorporated and at the same time executed a mortgage on several properties, including these, to the corporation. Tuscarora paid the banks until March, 1969 but the mortgages were never assumed by it.
Tuscarora Building Products Incorporated is a corporation controlled by Thomas Quigley. He is the president and a major stockholder of the corporation. All remaining stock is owned by members of his immediate family.
On October 1, 1965, the property was sold by the Onondaga Commissioner of Finance for failure to pay the 1965 taxes. The county bid in the property and was issued a tax certificate. The tax certificate was subsequently purchased by two men named Fisher and Kaufman on September 28, 1968, a matter of days before the expiration of the mortgagees ’ redemption period (three years from the date of sale), but subsequent to expiration of owner’s time to redeem (two years).[1] It is alleged and denied that Quigley learned of this tax sale certificate before the redemption period expired but that he failed to notify the banks so they could act to protect their security. It is doubtful that he had any duty to notify them, since he was not their mortgagor. (24 N. Y. Jur., Fraud & Deceit, § 106 et seq.) Apparently, Quigley did not mislead the banks during these few days. (Noble v. Niemiec, 205 Misc. 785.)
The tax certificate was eventually purchased by Quigley for $2,500 paid from funds of Tuscarora in February, 1969. On March 6, 1969, a deed was executed by the Commissioner of Finance in favor of Thomas Quigley for the subject property after payment of the delinquent taxes and penalties.
It is the claim of Mr. Quigley that the tax sale and expiration of the three-year redemption period resulted in the extinguishment of the banks’ mortgages and that he has a clear and absolute title to the premises.
It is the answer of the banks that Mr. Quigley defrauded them for the purpose of avoiding the mortgages. They charge that he knew of, but did not disclose, the tax delinquency prior to *1055 the expiration of the mortgagees ’ redemption period; that when he did advise the banks, it was agreed by the parties that all negotiations with Fisher and Kaufman would be done through Mr. Quigley because, as an individual, he would more likely keep the price demanded within reasonable bounds, but the banks say he promised that he and Tuscarora would protect the banks’ interest and honor the mortgages.
A purchaser who holds a tax deed as the result of a valid tax sale obtains by that deed good title as to everyone except a party to whom he owes a duty to pay the tax. A mortgagor or his grantor cannot defeat the lien of his mortgagee by purchasing a tax title. (Oliphant v. Burns, 146 N. Y. 218; Pines v. Novick, 168 App. Div. 155; Wheeler v. Handy, 123 Misc. 775.) The purchase operates merely as a payment of the tax, a duty which the owner already had. (Fulton v. Whitney, 66 N. Y. 548; Bennett v. Austin, 81 N. Y. 309.) If the tax deed had been taken in the name of Tuscarora, the original owner, there is no question the mortgages would be valid even though the deed was acquired after the redemption period expired. Such a purchaser is not entitled to the period of limitations. (85 C. J. S., Taxation, § 809, subd. a.) The same rule has been applied when purchase is made and title taken by a wife for her husband rather than in the owner’s name. (Seymour v. Seymour, 120 Misc. 525.)
A person controlling a corporation cannot cause its property to be transferred to him in derogation of the rights of the corporation’s creditors. (Grad v. Roberts, 14 N Y 2d 70.) Interplay between a corporate entity and a dominating stockholder may not be allowed to defraud a mortgagee. The doctrine of piercing the corporate veil is applicable to prevent fraud or illegality (Bartle v. Finkelstein, 19 A D 2d 256; Lowendahl v. Baltimore & Ohio R. R. Co., 247 App. Div. 144; 11 N. Y. Jur., Corporations, § 10-16). The fraud claimed here is the purchase of a tax certificate by the owner, Tuscarora, in the name of Quigley so that the corporate property could be transferred to him for purposes of obtaining a tax title which defeated the mortgagees’ rights.
Quigley argues that the tax became delinquent before Malvasi transferred the property to Tuscarora. The cases make no distinction on this point with respect to tax deeds. (Cf. Appellate Division dissent in Kossoff v. Wald, 245 App. Div. 646, 652, revd. 272 N. Y. 480, quoting extensively from Connecticut Mut. Life Ins. Co. v. Bulte, 45 Mich. 113, 140 [Cooley, J.].)
It is said that ‘ ‘ purchase may not be made and a valid tax title acquired by any person who is under a contractual, or *1056 moral or legal, obligation to pay the taxes, whether by reason of interest in the premises or relationship to others interested therein.” (85 C. J. S., Taxation, § 809, subd. a.) The issues must be tried out. All motions denied.

. Onondaga County is governed by a special act of the Legislature, Onondaga County Tax Act (L. 1937, ch. 690, as amd. by L. 1964, ch. 768, L. 1967, ch. 677). Pursuant to that act, section 8 provides that the owner may within two years from the date of the tax sale and the mortgagee may within three years from the date of the tax sale, but not thereafter, redeem any property sold for taxes by paying the sum mentioned in the certificate of sale with interest and penalties. 'Such payment by a mortgagee becomes a part of the mortgage debt.